UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JUAN CARLOS CONDE MASDIAZ,

        Petitioner,

    v.

WARDEN, FLORIDA SOFT SIDE
SOUTH DETENTION CENTER,
U.S. ATTORNEY GENERAL,

        Respondents.

Case No. 2:26-cv-1635-KCD-KRH

## **ORDER**

Petitioner Juan Carlos Conde MasDiaz has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement ("ICE"). (Doc. 1.)[1] He claims that his continued imprisonment violates the Fifth Amendment as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). Respondents oppose the petition. (Doc. 5.) For the reasons below, the petition is **GRANTED**.

## I. Background

MasDiaz is a Cuban native who entered the United States in 1996. He was later convicted of drug charges. Removal proceedings were started, and in 2013, an immigration judge ordered him removed. When that deportation

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

did not come to fruition, MasDiaz was placed on an order of supervision. On November 16, 2025, he was again detained, and his supervision revoked. He's been in custody ever since.

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## III. Discussion

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, like here, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

2

But as the Supreme Court explained in *Zadvydas v. Davis*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Applied here, MasDiaz satisfies the initial temporal requirement. ICE took him into custody over six months ago. As a result, *Zadvydas*'s burden-shifting framework applies. MasDiaz has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. He has allegedly received no indication that ICE will remove him, as they have provided no travel documents or a

3

confirmed removal date. (Doc. 1.) Coupled with his Cuban citizenship and prior failed attempts at removal, those facts are enough.

The burden thus shifts to the Government to rebut MasDiaz's showing, but they fail to do so. *Akinwale*, 287 F.3d at 1052. This outcome should come as no surprise—the record offers no documents, no diplomatic agreements, and no concrete evidence that MasDiaz will be removed in the near future. (Doc. 5.) Instead, the Government proffers that it attempted to remove MasDiaz to Mexico, but he "fail[ed] to cooperate." (Doc. 5 at 2.) That's it. The Government provides no further details—or even evidence—about this alleged lack of cooperation or what occurred. Because the Government offers nothing to show that MasDiaz impeded his own removal and offers nothing to suggest that his removal to Mexico, or anywhere else, is more likely now than it was decades ago, MasDiaz must be released.

It is easy to see why this outcome might cause unease. MasDiaz is a convicted criminal. Yet, because the Government is completely unable to effectuate his removal, he has been allowed to live in this country for nearly twenty years without facing the ultimate immigration consequence. But this Court is bound by the law. And the law is clear: the Government cannot lock individuals in a cell indefinitely as a workaround for a stalled deportation process, nor can it use indefinite detention simply to placate popular opinion. The Constitution cannot be ignored just because the facts are frustrating. If

there is a flaw in a system that leaves convicted criminals in a state of perpetual immigration limbo, the remedy lies in the halls of Congress or with the Executive branch—not with a federal judge.

### III. Conclusion

Because the Government cannot show any real prospect of deportation, the Court finds no significant likelihood that MasDiaz will be removed in the reasonably foreseeable future. He is therefore entitled to release from ICE custody under *Zadvydas*. But that release is not a free pass—he remains subject to the strict conditions of his order of supervision. To the extent MasDiaz's petition raised any other claims, they are denied. He is entitled to no other relief from the facts presented.

Accordingly, it is **ORDERED:**

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as set forth above.

2. Respondents are ordered to **RELEASE** Petitioner Juan Carlos Conde MasDiaz from custody within 48 hours of this Order under the prior conditions of supervision, which Petitioner must continue to comply with.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**ENTERED** in Fort Myers, Florida on June 9, 2026.

Kyle C. Dudek
United States District Judge